

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
XXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4035
Re: Construction of Stock Transfer
Tax as applied to "certificates of
interest in any business conducted
by trustee or trustees."

Your letter of September 22, 1941, requests our opinion relating to the taxability of the transfer of certain interest in oil and gas under the Stock Transfer Tax Law, being Article 15 of House Bill No. 8, Acts, Regular Session, Forty-seventh Legislature. We quote your several questions:

"(a) A, B, C, and D own the working interest in an oil and gas lease which, for convenience, stands in the name of D, trustee. There is nothing on record showing who are the beneficial owners, but A, B, and C have, in fact, an assignable interest in the lease. No trust certificates are issued. If A assisgns his interest in the lease to B, is this transaction taxable?

"(b) In the case supposed in (a), would it make any difference that D had issued trust certificates evidencing the interest of A, B, C, and D in the lease, and that the trust certificate itself was actually assigned  by A to B?

"(c) A is the owner of the working interest in an oil and gas lease. He sells a small interest in the working interest to several other persons and gives each of them an assignment of such interest. By mutual agreement, A is permitted to operate the lease, paying the expenses of operation out of the income, and remitting to each owner the portion of the proceeds to which he is entitled. A is not, however, designated as trustee. If one of the other persons holding an undivided interest in the working interest assigns his interest to another, is this assignment taxable?

"(d)  If, instead of transferring a portion of the working interest, A had assigned an overriding royalty interest in the case supposed in (c), would the assignment of the overriding interest be taxable?

"(e)  A, the owner of the working interest, assigns 1/4 of the production to B until B shall have received the sum of $10,000.00. (This is ordinarily termed an oil payment).  If B assigns this oil payment to C, would the assignment be taxable?"

If any of the transfers described in your several questions are subject to payment of a stock transfer tax it is because they are described by the phrase underlined in Section 1 of Article 15 of said House Bill No. 8, which reads in part:

"Section 1.  There is hereby imposed and levied a tax as hereinafter provided on all sales, agreements to sell, or memoranda of sales, and all deliveries or transfers of shares, or certificates of stock, or certificates for rights to stock, or certificates of deposit representing an interest in or representing certificates made taxable under this Section in any domestic or foreigh association, company, or corporation, or certificates of interest in any business conducted by trustee or trustees made after the effective date hereon, whether made upon or shown by the books of the association, company, corporation, or trustee, or by any assignment in blank or by any delivery of any papers or agreement or memorandum or other evidence of sale or transfer or order for or agreement to buy, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to such stock or other certificate taxable hereunder, or with the possession or use thereof for any purpose, or to secure the future payment of money or the future transfer of any such stock or certificate, on each hundred dollars of face value or fraction thereof, three (3) cents, except in cases where the shares or certificates are issued without designated monetary value, in which case the tax shall be at the rate of three (3) cents for each and every share. . . ." (Underscoring ours)

It seems apparent to us that this Act does not purport to tax transfers of interests in all partnerships and trusts.  From the context of the Act considered as a whole as well as from the plain meaning of the words themselves, it seems to us that the phrase "certificates of interest in any business conducted by trustee or trustees" can only refer to certificates of stock or interest in those business entities known as joint stock associations, business trusts or Massachusetts trusts.  The language is not susceptible of a construction which would include partnership interests or interests of the beneficiaries of a "pure" trust.

Although, since the decision by the Supreme Court of Texas of Thompson v. Schmidt, 115 Tex. 53, 274 S.W. 554, the shareholders in a business trust have been held to be liable as partners, there are nevertheless, certain characteristics of a business trust which distinguishes it from a partnership on one hand and a "pure" trust on the other. It may be useful to review some of the definitions which have been given of "business trusts."

The definition found in 25 Texas Jurisprudence 174 reads as follows:

"A 'business trust,' or, it is sometimes called, a 'Massachusetts trust,' may be said to be a form of business organization which is the product of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may, from time to time, be the holders of transferable certificates issued by the trustees, showing the shares into which the beneficial interest in the property is divided. These certificates -- which resemble certificates of shares of stock in a corporation, and are issued and transferred in like manner -- entitle the holder to share ratably in the income of the property, and, upon termination of the trust, in the proceeds. . . ."

Professor Bogert in his work on Trusts devotes a chapter to business trusts and describes them in the following manner (Vol. 2, page 971):

"For many years the trust has been used in Massachusetts as a form of business organization, a substitute for incorporation, and in the years following the World War the device came widely to be used elsewhere, especially in Texas and other states in the Southern oil fields. Such organizations are usually referred to as 'business trusts' or 'Massachusetts trusts,' although the term 'common-law trust' is also frequently used, emphasizing the fact that the organization is one formed without the aid of statute. The usage of these terms has no entirely crystalized, and in such a field definitions are often of little value; but in general, the term 'Massachusetts trust'is used 'to denote an unincorporated organization created for profit under a written instrument or declaration of trust, the management to be conducted by compensated trustees for the benefit of persons whose legal interests are represented by transferable certificates of participation, or shares.'"

That the nature of a business trust is essentially different from that of a "pure" trust and that the rules of law applicable thereto

differ widely is indicated by the fact that the American Law Institute's Restatement of the Law of Trusts expressly excludes from the treatise any discussion of business trusts, declaring in Section I(b) thereof:

"... The business trust is a special kind of business association and can best be dealt with in connection with other business associations."

Perhaps the simplest way to try to describe the type of organization which was contemplated by the Legislature in the phrase "any business conducted by trustee or trustees" would be to say that it is a quasi-corporate unincorporated association. In the cases concerned with the application of federal taxes to such organizations we find the courts again and again laying emphasis upon analogies to corporate structure.

In the case of In re Associated Trust, 222 Fed. 1012, the court held the Massachusetts trust there involved to be an "unincorporated company" within the meaning of the Federal Bankruptcy Act because it found the trust to have the following features in common with corporations:

(a) A capital contributed by the certificate holders
(b) future managers are to be chosen by the certificate holders
(c) the character, scope, size of the enterprize may be changed or terminated by certificate holders
(d) these rights and powers are given to the certificate holders in the instrument by which the trust is constituted.

In Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L. Ed. 183, the court in holding that the joint stock association was subject to the payment of federal income taxes as though it were a corporation, after reciting various characteristics of the association which were similar to those of corporations declared: "Because of this resemblance in form and effectiveness, these business organizations are subjected by the Act to these taxes as corporations."

In his article in 25 Columbia Law Review 305 entitled "Massachusetts Trust under Federal Tax Law," H. Rottschaefer summarized his conclusions at page 314 as follows:

"A business trust is, therefore an association under existing federal tax laws only if operating under a declaration of trust that provides for a division of the whole interest in the enterprise into shares transferable with only such restrictions as would be valid in the case of corporate stock; that vests the conduct of the enterprize in trustees responsible to the beneficiaries as a group and insures the ultimate control of the trust by the latter as a group. Only then is

there both association among the beneficiaries and
quasi-corporate form of organization. The last two
features are incompatible with the existence of a
real trust, where the trustees act as principals.
Hence no such trust can be an association."

The power of the trustees to engage actively in business as dis-
tinguished from the mere collection and distribution of revenue from the
specific property conveyed to them is unquestionably an essential element
of a business trust. Hecht v. Malley (1924), 265 U.S. 144, 44 S. Ct. 462.
There is, however, some conflict in the cases as to whether the criterion
shall be the powers enumerated in the trust indenture or the powers actually
exercised by the trustees. In Tyson v. Commissioner of Internal Revenue
(Cr. Ct. of App. 1931), 54 Fed. (2d) 29, the court held that the Zenith
Real Estate Trust was not an association within the meaning of the Federal
Revenue Acts of 1924 and 26 although by the trust indenture the trustees
were given the power to buy and sell real estate, because actually this
trust owned only a single building under a long term lease, and the trustees'
only duty was to collect the rent, pay taxes, etc., and distribute the net
income among the certificate holders. Said the court:

"Our question then is, when is a Massachusetts
trust an association under these acts, and when
is it a trust?

"Probably the best test is to be found in the ac-
tivities of the entity . . . in determining when a
trust is an association courts must look to the
substance rather than the form of the entity used to
carry on the business. Likewise, it must be more
influenced by the instrument's activities than the
ascertainment of the possible field of its activity.
. . ."

The "activity" test of business trusts is recognized by H.
Rottschaefer, page 306, op. cit.: "Trusts are now classified for tax purposes
into holding and operating trusts. The former are defined as those in which
the trustees merely hold property for the collection and distribution of its
income; they are held not to be associations. The latter are defined as
those in which the trustees are not so restricted 'but are associated together
in much the same manner as directors in a corporation for the purpose of, and
are actually engaged in carrying on some business enterprise'; they are deemed
associations 'independently of any control exercised by the beneficiaries'."

The New York stock transfer tax statute recognizes the distinction
between "holding" and "operating" trusts in that it expressly exempts from the
tax "certificates issued under a noncorporate investment trust agreement of
the fixed type". (emphasis ours) We believe a like distinction is intended
in the Texas Act since it makes taxable only "certificates of interest in any
business conducted by trustee or trustees." Trustees of a purely "holding"
trust can hardly be said to be conducting a business.

Another question suggests itself: What are the minimum numbers of certificate holders and trustees possible in a business trust? Mr. Rottschaefer answers these questions at page 315 of his article:

"The mere fact that there was but a single beneficiary, either at its inception or at some subsequent time, should not affect the conclusions.

"The case is not as clear when there is but a single trustee. The difficulty arises from the absence of instances in which corporations have but a single director."

However, he concludes that (Note 31, page 312) "Business trusts are conceivable that have but a single trustee or a single beneficiary." In view of the fact that the Texas statute expressly names "trustee or trustees" we believe that multiple trustees are not a necessary prerequisite to the existence of such a business trust to which the stock transfer tax would be applicable.

In the light of the general principles deducible from the foregoing authorities, we shall consider the specific fact situations presented in your request.

In the situation presented in your question (a) there appears to be neither a trust indenture prescribing the respective rights and duties of the trustees and beneficiaries nor trust certificates issued to the beneficiaries. The relationship among the four owners of the lease appears to be in the nature of an informal partnership with legal title in the name of one of the partners. It is certainly not a quasi-corporate organization meeting the qualifications of a business trust, and in our opinion the transfer of the interest of one of the partners is not subject to payment of a stock transfer tax.

The situation in (b) differs only to the extent that the person holding legal title to the lease has issued trust certificates to evidence the interest of the other men in the lease: On its face, this does not describe a business trust. However, if there exists a trust indenture conferring upon the trustee or trustees the powers to engage in an active business, to buy and sell leases, etc., and confers upon the beneficiaries the power to elect a new trustee or trustees, it would be a business trust and the transfer of certificates of trust would be taxable under the Stock Transfer Tax Act.

In each of the situations involved in your questions (c), (d) and (e) the transfer is a transfer of a legal, fee interest in realty and could not be subject to the payment of a stock transfer tax.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Walter R. Koch
    Walter R. Koch
       Assistant

APPROVED OCT 27, 1941
/s/ Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL
WRK:LM:gw